NOT DESIGNATED FOR PUBLICATION

No. 120,157

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

V.

DARICK CHARLES BYRD,
*Appellant*.


MEMORANDUM OPINION

Appeal from Dickinson District Court; BENJAMIN J. SEXTON, judge. Opinion filed January 8, 2021. Affirmed in part and reversed in part.


*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.


*Amy C. Coppola*, assistant county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before ARNOLD-BURGER, C.J., GREEN and BUSER, JJ.


PER CURIAM: Following a bench trial, the trial court found Darick Charles Byrd guilty of criminal threat and harassment by telecommunication device. The principal argument of Byrd on appeal is that insufficient evidence supports his convictions. We note, however, that Byrd's criminal threat conviction—under a portion of K.S.A. 2017 Supp. 21-5415(a)(1)—has been found unconstitutional. See *State v. Boettger*, 310 Kan. 800, 822, 450 P.3d 805 (2019). Based on this constitutional defect in this subsection, we reverse Byrd's criminal threat conviction. Nevertheless, we conclude that a review of the record in the light most favorable to the State establishes that a rational fact-finder could

1

find Byrd guilty beyond a reasonable doubt of harassment by telecommunication device. As a result, we affirm in part and reverse in part.

On January 19, 2018, Abilene police officers responded to a call that Byrd was threatening people in his apartment complex. At that time, the officers also learned that Byrd tried to enter a business after hours to speak to the owner. The officers gave Byrd, who suffered from schizophrenia, a warning.

The next day, Saturday, January 20, 2018, Byrd called a 911 dispatcher twice. He spoke with J.S. both times. He initially called the dispatcher from his cell phone at 7:10 a.m. During that phone call, Byrd and J.S. had the following conversation:

> "J.S.: Dickinson County 911. Do you have an emergency?
> "Byrd: No.
> . . . .
> "J.S.: What's going on?
> "Byrd: I just got a complaint. I got a complaint.
> "J.S.: Okay.
> "Byrd: I feel like the police officers in this town are stalking me.
> "J.S.: Okay. Do you want us to—
> "Byrd: I know you can't do nothing about it. I know you can't do nothing about it. Don't worry about it. It's my problem. I'll solve it.
> "J.S.: Okay. What's your address?
> . . . .
> "Byrd: I won't give you my address because you're going to send police to my door. I don't want police coming to my house and stalking me anymore. Do you understand what I'm talking about?
> "J.S.: Okay, the Abilene Police Department or the Sheriff's Department?
> "Byrd: Abilene Police Department, the Sheriff's Department, every one of them are stalking me.
> "J.S.: Okay.

2

. . . .

"Byrd: I've been up to the police station twice. . . . There was a hate crime that happened to me. And I talked to [the police chief.] And that man said he couldn't help me. Actually, I told him that he couldn't help me because he had no information for me. I told him I had been involved in a hate crime. He said, you know, there's nothing I can do about it because I don't understand—is what he told me. And I told him, you can't help me. So now I'm calling the police station. I'm telling you guys to stop this stalking thing, and if you guys can't help me, I will solve it on my own.

"J.S.:  And how are you going to solve it on your own?

"Byrd:  Well I'm going to follow Jesus Christ and wherever he takes me. Whatever happens to me following Jesus Christ is how I'm going to do it because I am a good man.

. . . .

"J.S.:  You understand that you called dispatch right? That we just dispatch for the police department?

"Byrd:  I understand.

"J.S.:  Okay.

"Byrd:  I called 911 because I have a complaint on the police force. You got anybody else for me to talk to, give me their number. Give me somebody to talk to so I can make a complaint on the police force in Abilene.

"J.S.:  Okay, that would be the police chief and you said you already talked to him. And there—

"Byrd:  Twice. Twice. Is there anybody else I can talk to?

"J.S.:  Nope, that would be it.

"Byrd:  Thank you. Then, I'm going to hang up now [because] you can't help me either. Like I said, I'm going to deal with it on my own. Bye-bye now."

Next, Byrd called the dispatcher from the lobby of the Abilene Police Department at 10:26 a.m. During the second phone call, Byrd told J.S. she was "going to be punished":

"J.S.:  Dickinson County Communications.

"Byrd:  Hey, who is this?

"J.S.:  [J.S.]

"Byrd:  Okay. Hello. This is Darick Byrd. Where do you work at?

"J.S.:  At the communication center . . . in the county building.

"Byrd:  Okay. Is that where the police station is at?

"J.S.:  No, it's not. The sheriff's department is there.

. . . .

"Byrd:  Are you open today?

"J.S.:  No we're not.

"Byrd:  Okay. So you're just there after hours.

"J.S.:  Yep.

"Byrd:  Okay. . . . Do you have any idea who I am?

"J.S.:  No, I don't.

"Byrd:  Okay, do you want to know?

"J.S.:  Can I help you with something sir?

"Byrd:  Yes, ma'am. I feel like I've been threatened in Abilene. Terroristic threat.

. . . .

"J.S.:  Okay. Would you like to speak with an Abilene officer again?

"Byrd:  I have.

"J.S.:  Okay.

"Byrd:  You don't do that though.

"J.S.:  What can I do for you right now?

"Byrd:  I don't know. What do you want me to do? How do you want me to protect myself?

"J.S.:  I can send an officer to wherever you're at.

"Byrd:  I'm already at the police station. I've already talked to an officer. There's cars here. Nobody wants to talk to me. The doors are locked.

"J.S.:  Okay, well then I will let them know that you're there.

"Byrd:  Well you don't have to [because] I'm just going to leave. You all can't help me. I'm just asking you all, do I need to protect myself? And, if do need to protect myself, how do you want me to do it? Can you instruct me on how to do that?

"J.S.:  I can't, but an officer can. I'm just a dispatcher.

4

"Byrd: They already told me they can't help me. The captain—the captain told me he wouldn't help me.

"J.S.: Okay. Well I'm just a dispatcher so I—

"Byrd: I'm going to keep praying for some help.

"J.S.: Okay.

"Byrd: And when it gets here, I feel bad for anyone that couldn't help me.

"J.S.: Alright.

"Byrd: You're going to be punished. Bye-bye."

A little over an hour later, at 11:48 a.m., Byrd entered the unlocked lobby section of the county building where J.S. worked. He attempted to open all the locked doors in the lobby. But when he was unable to open the doors, he left. In total, Byrd was at the county building about 10 minutes.

Several days later, on January 28, 2018, Byrd called J.S. at dispatch again. At that time, Byrd and J.S. had the following conversation:

"J.S.: Dickinson County 911. Do you have an emergency?

"Byrd: Yeah.

"J.S.: What's the address of your emergency?

"Byrd: Don't worry about it, the cops are here already.

"J.S.: Okay, where are you calling from?

"Byrd: Don't worry about it. I'm in Abilene. The cops are here already. Explain to me why they're already here. I hadn't even called emergency.

"J.S.: I don't—

"Byrd: What's going on? Everybody keeps telling me that same fucking shit—they don't know. Something is going on and you all are trying to cover it up. I'm tired of being terrorized by police officers in this community. I filed a complaint already. You all don't seem to want to process my complaint. I keep telling you all [these] police officers ain't protecting me. They keep committing criminal violations to my legal rights. And what do you want me to do about it? Hello?

"J.S.: Yeah, what would you like to do about it?

5

"Byrd: What do you want me to do about it? Don't be stupid. This is not a game. I'm legally being terrorized by police officers. This is legally being terrorized. Is that even a thing? Legal terrorism?

"J.S.: I don't know. I'm not a police officer. So I couldn't tell you that.

"Byrd: What are you then?

"J.S.: I'm a—

"Byrd: Are you just a bitch on the phone?

"J.S.: Ah, I don't need to talk to you if you're going to continue to talk to me that way.

"Byrd: Thank you. If something bad happens to you all, please don't blame me for it. Bye."

Based on Byrd's conversation with J.S. on January 20, 2018, the State charged Byrd with one count of criminal threat. Based on Byrd's conversation with J.S. on January 28, 2018, the State charged Byrd with one count of harassment by telecommunication device. The State also charged Byrd with two unrelated counts of criminal threat.

Ultimately, Byrd represented himself at a bench trial. In its case-in-chief, the State admitted into evidence the recordings of Byrd's 911 calls to J.S. and the surveillance video of Byrd trying to enter J.S.'s workplace. Further, the State presented the testimony of J.S. and a psychiatrist who examined Byrd—Dr. William Logan. J.S. explained that she interpreted Byrd's statements about being punished as "[Byrd] was going to come and get us." Dr. Logan testified that Byrd could form criminal intent despite his schizophrenia. Concerning Byrd's statements to J.S., Dr. Logan testified that he did not believe Byrd wanted to personally "ex[act] revenge" on others. Yet, Dr. Logan thought that Byrd believed he "[could] call down God's wrath on people." Dr. Logan also thought that if Byrd felt "threatened and had a weapon in hand . . . he would react."

6

Meanwhile, Byrd's theory of defense was that he never intended to punish J.S. Instead, he was warning J.S. that her behavior was punishable by God. Byrd testified on his own behalf. He provided the following explanation about why he first called the dispatcher:

"My initial purpose was to file a complaint. I knew I couldn't do that. So after that—and I was curious about who I could talk to about protecting myself. I ended up going by it my own way. I ended up, you know, reading about gun safety, studying [the] Kansas statutes. . . ."

Byrd additionally testified about what he meant by using the word "punished":

"I meant that there's punishments for the law for unlawful activity. I mean, and even God, the way God—you know, 13 years ago, I know that people are going to be punished. I know a kid that lies, does stuff wrong, like my little sister gets punished. Punishment should not be looked at like a[n] act of violence. If your parents punch you, it's child abuse. You know, can't no parent hit a kid for crying in the store [about] what he can't have, kicking and screaming. But if you punish that child, that's an unlawful action. I've never been raised like that. I obey the law. Maybe that's what I was talking about. That woman needs to understand discipline, because she couldn't—I don't think she did her job properly when she felt like she was being criminally threatened."

In the end, the trial court found Byrd guilty of committing criminal threat against J.S. and harassment by telecommunication device against J.S. The court did not convict Byrd of his remaining criminal threat charges.

Byrd timely appealed to this court.

7

*Criminal Threat*

The trial court convicted Byrd of criminal threat against J.S. under K.S.A. 2017 Supp. 21-5415(a)(1), which states: "A criminal threat is any threat to: Commit violence communicated . . . in reckless disregard of the risk of causing such fear . . . ." So for this court to affirm Byrd's conviction, the evidence in the light most favorable to the State must support Byrd's statement, "You're going to be punished," constituted a violent threat made in reckless disregard of the fear the statement would cause J.S. Nevertheless, our Supreme Court in *Boettger* held the following: "The portion of K.S.A. 2018 Supp. 21-5415(a)(1) allowing for a conviction if a threat of violence is made in reckless disregard for causing fear causes the statute to be unconstitutionally overbroad because it can apply to statements made without the intent to cause fear of violence." 310 Kan. At 822. Because of the constitutional defect in this subsection, we reverse Byrd's criminal threat conviction.

*Harassment by Telecommunication Device*

The trial court convicted Byrd of harassment by telecommunication device under K.S.A. 2017 Supp. 21-6206(a)(1)(B), which provides: "Harassment by telecommunication device is the use of: A telecommunication device to: . . . make or transmit a call, whether or not conversation ensues, with intent to abuse, threaten or harass any person at the receiving end." The trial court found that "the only purpose" of Byrd's third phone call to J.S. was to harass or abuse J.S. because Byrd had no emergency when he made the third call. The trial court emphasized that Byrd made the third phone call after previously refusing J.S.'s suggested help of dispatching the police to his location. The trial court also emphasized that Byrd ended the third phone call by telling J.S. not to blame him if something bad happened to her.

8

Byrd argues that the trial court found him guilty of harassment by telecommunication device because his third call to J.S. at dispatch "was not really for an emergency." Byrd contends that he believed it was an emergency; therefore, the trial court should not have considered that his call "was not really for an emergency" against him. Nevertheless, Byrd's argument requires this court to reweigh the evidence in his favor. As previously explained, Byrd told J.S. that he did not have an emergency during his first phone call. He also testified that he called J.S. to file a complaint despite knowing she could not help him file a complaint. Thus, the evidence indicated that Byrd knew no emergency existed despite his belief that the police were stalking him.

Additionally, Byrd's argument ignores other significant facts supporting his guilt. For instance, this was Byrd's third phone call to J.S. During the third phone call when Byrd became irritated with J.S., he told her not to "be stupid." He questioned whether she was "just a bitch on the phone." He then ended the conversation by telling J.S. not to blame him if something bad happened to her.

In short, the evidence supports that Byrd called J.S. with the intent to harass J.S. As a result, we affirm Byrd's harassment by telecommunication device conviction.

Affirmed in part and reversed in part.